IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
TEXAS SHERMAN DIVISION

| | | |
|---|---|---|
| MARVIN HOLLOWAY | § | CIVIL ACTION NO.: 4:25-cv-00671 |
| | § | |
| Plaintiff, | § | |
| and | § | |
| | § | |
| v. | § | Jury Requested |
| | § | |
| SMYRNA READY MIX, LLC a/k/a SRM CONCRETE | § | |
| | § | |
| | § | |
| Defendant. | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff **MARVIN HOLLOWAY,** ("Plaintiff"), and files this Original Complaint against **SMYRNA READY MIX, LLC a/k/a SRM CONCRETE** ("Defendant") and in support thereof would respectfully show unto the Court as follows:

## I. NATURE OF ACTION

1. Plaintiff Marvin Holloway brings this action under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e) et seq., and 42 U.S.C. § 1981 to remedy acts of employment discrimination and retaliation perpetrated against him by Defendant. Plaintiff also brings these claims under Title I of the American with Disabilities Act of 1990 ("ADA"), as amended and the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 et seq., seeking redress for interfering with his right to leave under the FMLA and in retaliation in violation of FMLA.

2. Plaintiff contends that other similarly situated employees have had previous accommodations including light duty or modified work responsibilities granted and that Plaintiff, an African American male, was denied such similar treatment as his peers based upon race.

3. Plaintiff contends that Defendant failed to provide him with a reasonable accommodation after he suffered a heart attack and that instead of providing an accommodation, Defendant terminated Plaintiff in violation of the ADA, as amended. Plaintiff further contends violations of FMLA.

## II. PARTIES

4. Plaintiff has at all times relevant to this lawsuit been a resident of Collin County, Texas.

5. Defendant Smyrna Ready Mix, LLC a/k/a SRM Concrete is a foreign limited liability company organized and existing under the laws of the State of Tennessee and is authorized to do business in Texas. Defendant has one hundred and sixty-three (163) locations in Texas[1] and has systematically targeted Texas and availed itself of the forum. Defendant may be served with process by serving its registered agent, Northwest Registered Agent, LLC at 5900 Balcones Drive, Suite 100 Austin, TX 78731 USA.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely filed a charge of discrimination with the Texas Workforce Commission and it was dual filed and presented to the EEOC.

7. On May 1, 2025, the EEOC issued a Notice of Right to Sue Letter to Plaintiff, which is attached as Exhibit A. Plaintiff files this Complaint within ninety (90) days after receipt of the Notice of Right to Sue Letter from the EEOC.

## IV. JURISDICTION AND VENUE

8. Plaintiff has been discriminated against because of his race and disability. Defendant's conduct is in violation of the ADA and this Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., amended by the Civil Rights Act of 1964, as amended and 28 U.S.C. § 1331 and § 1343(a)(4).

---

[1] https://www.smyrnareadymix.com/locations

9. Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred. Venue is further proper in this District pursuant to 28 U.S.C. § 1391(c). Defendant is subject to personal jurisdiction in this District in that they maintain a facility and conduct business operations in this District.

## V. FACTUAL ALLEGATIONS

### A. Factual Background

10. Plaintiff began employment on 9/20/2023 with Vulcan Materials. Thereafter, on or around November 2023, Vulcan Materials was acquired by Defendant. At all relevant times, Plaintiff was employed by Defendant working in Anna, Texas (Collin County) within this District.

11. On May 8, 2024, Plaintiff suffered a heart attack[2] while in the course and scope of employment. Emergency medical records indicate that the onset of chest pain began while Plaintiff was "climbing up the ladder in his truck." Plaintiff was hospitalized for 4-5 days.

12. On July 18, 2024, Claimant underwent triple bypass surgery.

13. After triple bypass surgery, Plaintiff requests an accommodation for leave until September 10, 2024. Instead of granting the leave request or engaging in the interactive process relating to reasonable accommodations, Defendant terminates Plaintiff's employment on July 22, 2024.

14. Plaintiff was terminated before his Family Medical Leave Act ("FMLA") was exhausted and while he was recovering from heart surgery. Defendant did not offer Plaintiff continuation of FMLA or the opportunity to work in another position with the company for which he was qualified.

15. Plaintiff further alleges that Defendant intentionally terminated him to avoid the cost and expense of Plaintiff incurring FMLA and/or short term or long-term disability benefits.

16. At all times relevant to this lawsuit, Plaintiff had serious health conditions that required

---

[2] Right ventricular involvement in acute inferior infarct.

continuing treatment by a health care provider.

17. At all times relevant to this lawsuit, Defendant and its agents/employees, including Robyn Gilchrist of human resources and Plaintiff's direct supervisor, Jimmy Shelton, had actual notice of the injury producing event occurring at work and Plaintiff's request for medical accommodations.

18. Plaintiff reasonably and diligently sought medical treatment, including hospitalization on the day of the heart attack and eventually undergoing triple bypass surgery on July 18, 2024.

19. Thereafter and under the advice of his treating medical providers, Plaintiff requests an accommodation for leave until September 10, 2024, to accommodate his recovery from triple bypass surgery. Four days later on July 22, 2024, Plaintiff is wrongfully terminated.

20.Plaintiff alleges that from May 8, 2024 (date of the heart attack) until July 22, 2024 (date of termination) he was not provided with any wages.

21.Plaintiff further alleges that Jimmy Shelton (a white male) had the same and/or similar health concerns before Plaintiff, and that Jimmy Shelton was given the option for light duty. Accordingly, Plaintiff alleges this raises the inference that race played a factor in the Plaintiff's termination.

22.Plaintiff further alleges that Thomas Hunter Parker (a white male) had issues with his commercial driver's license. Instead of being terminated, Defendant provided Mr. Parker an accommodation, including riding with other employees of Defendant and learning how to measure and load batches. Accordingly, alternative work duties and accommodations were extended to Mr. Parker (a white male) until his commercial driver's license was straighten out. None were provided to Plaintiff. Accordingly, Plaintiff alleges this raises the inference that race was a factor.

23. At all times relevant to this lawsuit, Plaintiff attempts to exercise his rights under FMLA and seek an accommodation for short disability in accordance with Defendant's leave policy.

24. Between May 8, 2024, and the date of his termination, Plaintiff continued informing his

employer of his medical status and supply it with medical documentation generated by his physicians pursuant to Defendant's leave policy. On July 22, 2024, Robyn Gilchrist of human resources denies Plaintiff's request for an accommodation and Defendant terminates Plaintiff's employment.

**B. Foreseeability of Problem**

25.Glassdoor reports that 61%, or about three in five U.S. employees have witnessed or experienced discrimination in the workplace.[3] The same

26.The same survey reports that 42 percent of employed adults in the U.S. have experienced or witnessed racism in the workplace; the highest percentage of the four countries surveyed.[4]

**C. Purpose of the Law**

27.The federal anti-discrimination laws primary objectives are prophylactic, chiefly aimed not to provide redress but to avoid harm.

28. Employers may be liable for punitive damages who do not make good-faith efforts to prevent discrimination in the workplace to accomplish the objective of motivating employers to detect and deter discrimination violations.

29. The right to expect that companies will prevent any form of discrimination is essential to the community. The right to expect that companies must care about workplace laws to protect us from damages is essential to the community.

**D. Smyrna Ready Mix, LLC a/k/a SRM Concrete**

30. Defendant operates 560 concrete plants, 27 quarries, and 12 cement terminals in 23 states.[5]

31. Defendant is the nation's number 1 ready-mix producer, employing 8,500 team members.[6]

32. Defendant knows that discrimination and retaliation is foreseeable as a potential problem in

---

[3] https://www.glassdoor.com/blog/new-study-discrimination/
[4] *Id.*
[5] https://www.smyrnareadymix.com/
[6] *Id.*

the workplace.

**E. Defendant's Systemic Failures**

33. Defendant has a pattern and practice of racial discrimination.

34. Defendant has faced similar lawsuits arising from claims of racial discrimination, e.g. *Quintana v. Smyrna Ready Mix Concrete, LLC,* Case No.: 2:19-cv-00224; *Collier v. Smyrna Ready Mix Concrete LLC,* Case No.: 5:24-cv-01511-LCB.

35. Plaintiff alleges that Defendant has a pattern and practice of failing to train and supervise its employees and because of this Defendant has systemic discriminatory patterns and practices embedded within its culture. As set forth in the *Collier* lawsuit, *supra*, at ¶ 16: "[O]n or around April 21, 2023, while Plaintiff was at lunch with Caucasian co-workers Keith Aycock, Chris Ball, and Patrick Johnson, Ball brought up the topic of the Juneteenth holiday. After looking up the meaning of the holiday on the internet, Ball said, "It's a stupid holiday…black people need to get over slavery…it was no big deal…black people are just trying to get attention…black people use slavery as an excuse… slavery doesn't matter anymore."

36. The *Collier* lawsuit at ¶ 18 further alleging, "[T]he same afternoon, Plaintiff's Caucasian co-worker, Cole (l.n.u.), approached Plaintiff and proceeded to pull out a lighter with a Rebel flag on it, clicking it to light just in front of Plaintiff's face."

37. Defendant hires human resource ("HR") personnel who are not qualified to follow policies prohibiting discrimination and retaliation laws.

38. Defendant fails to adequately train its managers to follow policies prohibiting discrimination and retaliation laws.

39. Defendant fails to supervise its managers to ensure they follow policies prohibiting discrimination and retaliation laws.

40. Because Defendant fails to hire qualified HR personnel and adequately train and supervise, Defendant has an embedded pattern and practice of discrimination and retaliation.

41. Defendant discriminated against and fired Mr. Holloway, failing to treat him equally as peers.

42. Although foreseeable, Defendant failed to prevent discrimination and retaliation against Mr. Holloway. For these reasons and those stated herein, Plaintiff files the instant lawsuit.

## VI. CAUSES OF ACTION

### COUNT I – Race Discrimination, Civil Rights Act of 1886, 42 § 1981

43. The foregoing paragraphs are re-alleged and incorporated herein by reference.

44. Plaintiff's claim for recovery under Section 1981 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.

45. This law entitles a person of color to equal opportunity and treatment in employment.

46. When an employer acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages.

47. Plaintiff Marvin Holloway, an African-American, belongs to a protected group and was subjected to discrimination based on his race.

48. Defendant knew or should have known of the discrimination but took no prompt remedial or preventable actions.

49. The discrimination was obnoxious, severe, pervasive, and shocking to the conscious of the ordinary person. The discrimination ultimately interfering with the terms and conditions of his employment with Defendant.

50. Defendant engaged in material adverse actions against Mr. Holloway and the termination of Mr. Holloway materially altered his employment.

51. Defendant violated the federal statute by intentionally discriminating and retaliating against Mr. Holloway; and as a direct result of the discrimination caused damages to Mr. Holloway.

52. The liability can be either actual or constructive under the *McDonnell Douglas* framework.

53. Defendant knew or should have known that white employees, like Messers Shelton and Parker, had previously been afforded accommodations and that by treating Mr. Holloway in a disparate manner, Defendant was knowingly and actively discriminating based upon race.

54. Mr. Holloway sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which he is entitled to recovery under his causes of action.

55. Mr. Holloway is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

56. Mr. Holloway is also entitled to receive punitive damages because Defendant engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

**COUNT II – Violation of The Family and Medical Leave Act – Interference with Rights**

57. The foregoing paragraphs are re-alleged and incorporated herein by reference.

58. At all times relevant to this lawsuit, Defendant was a covered employer under the Family and Medical Leave Act ("FMLA"), as it was engaged in an industry affecting commerce, and it employed fifty or more employees for each working day during each of twenty or more calendar work weeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

59. Plaintiff was covered under the FMLA as an employee with a serious health condition employed by Defendant for at least twelve months, and who had performed at least 1,250 hours of service during the previous twelve-month period. *Id*. § 2611(2).

60. Plaintiff provided Defendant more than sufficient notice and information so that Defendant knew that Plaintiff was entitled to leave under the FMLA.

61. Under the FMLA, "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* § 2615(a).

62. The FMLA"s "prohibition against interference" prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights…." See 29 C.F.R. § 825.220(c).

63. Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *Id.*

64. Employers who violate the FMLA "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered." *Id.* § 825.220(b); 29 U.S.C. § 2617.

65. Defendant discriminated against Plaintiff in violation of the FMLA when Defendant terminated Plaintiff interfering with Plaintiff's rights under the FMLA.

**COUNT III – Retaliation in Violation of The Family and Medical Leave Act**

66. The foregoing paragraphs are re-alleged and incorporated herein by reference.

67. The FMLA makes it unlawful for any employer to discharge or in any other manner discriminate against any employee for taking part in proceedings or inquiries under FMLA.

68. At all times relevant, Plaintiff was engaged in protected activity by inquiring about FMLA and attempting to go on leave.

69. By the conduct alleged herein, Defendant took adverse action against Plaintiff in violation of the FMLA.

70. Defendant discriminated against Plaintiff when it retaliated against him by discharging him from his position while exercising FMLA rights.

**COUNT IV – Discrimination in Violation of the Americans with Disabilities Act**

71. The foregoing paragraphs are re-alleged and incorporated herein by reference.

72. At all times relevant to this lawsuit, Plaintiff was an employee within the meaning of the ADA and suffers from a disability and/or was perceived as disabled by Defendant.

73. At all times relevant to this lawsuit, Defendant was an employer within the meaning of the ADA.

74. Defendant has engaged in a continuous course of conduct of discrimination against Plaintiff because he is disabled and/or because Defendant perceived Plaintiff is disabled, as detailed in this Complaint, including, *inter alia*, discriminating against Plaintiff based on his disability. Such discrimination was intentional.

75. Defendant discriminated against Plaintiff and engaged in retaliatory conduct directed towards Plaintiff without cause based on his disability.

76. These actions on the part of Defendant were wholly inconsistent with the ADA in that Defendant terminated Plaintiff after Plaintiff requested accommodations due to his disability.

77. Defendant acted knowingly and willfully in violation of the ADA for which Plaintiff seeks relief under said statute, including damages for back pay, front pay, benefits, future pecuniary losses and compensatory damages. Because Defendant's discrimination was willful, Plaintiff is entitled to recover liquidated damages, attorneys' fees and costs under 42 U.S.C. § 12101, et. seq.

## VII. LIQUIDATED DAMAGES

78. Plaintiff requests an award of liquidated damages pursuant to the ADA as Defendant willfully violated his federally protected rights.

## VIII. ATTORNEYS' FEES

79. Defendant's wrongful conduct has made it necessary for Plaintiff to retain the undersigned attorneys to represent him in bringing and prosecuting this action. Plaintiff therefore seeks recovery of all reasonable attorneys' fees and costs pursuant to the ADA and 42 U.S.C. § 1981, et seq., § 1988.

## IX. JURY DEMAND

80. The Plaintiff requests trial by jury to the extent allowed by law.

## X. PRAYER

WHEREFORE, Plaintiff Marvin Holloway respectfully requests that the Court award him:

a. All past lost wages and benefits, plus interest;
b. Compensatory damages suffered because of this discrimination and retaliation;
c. Front pay and benefits;
d. All reasonable attorneys fees incurred in connection with this action;
e. All costs of court, including but not limited to expert expenses and court costs;
f. Pre-judgment and post-judgment interest at the maximum legal rate;
g. Liquidated damages for Defendant's willful violations of the ADA;
h. Punitive damages; and
i. All other and further relief to which Plaintiff may be entitled.

**Respectfully submitted,**

*/s/ Taylor M. Hunter*
Taylor M. Hunter
SBN: 24106123
taylor@thehunterlaw.com
Hunter Law Corporation, PC Texas Office
4131 North Central Expressway Suite 900
Dallas, Texas 75204
(214) 206 – 1200
(214) 206 – 1220 (facsimile)

**COUNSEL FOR PLAINTIFF**